**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael GANT and Jimmy Gant,**
**Defendants–Appellants.**

Nos. 96–2488, 96–2489.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1996.

Decided July 11, 1997.

Robert Lee Garrison (argued), Office of the United States Attorney, Criminal Divi-

sion, Fairview Heights, IL, for Plaintiff–Appellee.

Michael B. Metnick, Thomas W. Patton, Diane N. Cherry (argued), Metnick, Wise, Cherry & Frazier, Springfield, IL, for Michael Gant.

Stanley N. Wasser (argued), Feldman, Wasser, Draper & Benson, Springfield, IL, for Jimmy Gant.

Before BAUER, HARLINGTON WOOD, JR., and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This is a case about two brothers, Michael and Jimmy Gant, who knew things they should not have known and who tried to mislead a grand jury when they were asked about them. As a result of that grand jury testimony, they were both charged with perjuring themselves in violation of 18 U.S.C. § 1623, which prohibits making a false statement to a grand jury. After a jury trial, both men were convicted. On appeal, they both argue that their testimony was not material to a legitimate inquiry of the grand jury and that the grand jury investigation itself was unauthorized. Jimmy Gant also challenges the sufficiency of the evidence to support his conviction.

The story centers around an investigation of leaks from the U.S. Attorney's Office in Springfield, Illinois. In October 1993, Harold Lacy pleaded guilty to federal narcotics charges. In connection with that plea, he promised to cooperate with the federal prosecutors and to testify, if needed, at future court proceedings. While Lacy was discussing these matters at the U.S. Attorney's Office with AUSA David Risley, he recognized a clerical employee of the office, Arleen Williams. Lacy told Risley that Williams had been leaking information from the office about federal informers to Lacy's drug cohorts. Lacy was alarmed, because he thought Williams might have recognized him and revealed his status as an informant.

Williams was involved in an ongoing relationship with Michael Gant and had two children with him. From time to time, she would tell Michael about ongoing criminal investigations in her office that involved black defendants in drug-related cases. Through her job, she had access to a great deal of confidential information, including the identity of informants and targets in narcotics cases. Furthermore, her friend Antoinette Calloway, the docketing clerk, had total access to every scrap of information in the prosecutors' files.

After Lacy tipped Risley off about Williams, Risley first tried to confirm some of the story, including the fact that Williams and Michael Gant had children. He then contacted the FBI to report his suspicions. Special Agent Robert Anderson and Risley decided to set a trap for her that would confirm the allegations that she was leaking information. The trap involved the issuance of a fictitious arrest warrant on Lacy's brother, John Brown, who agreed to cooperate with the FBI and wear a secret recording device. Brown was to contact Jimmy Gant, Michael's brother, and to ask him to find out about the (fictitious) warrant.

Brown did as he was asked. On the morning of June 22, 1994, he drove to Jimmy's mother's house, summoned Jimmy from the house, and walked over with him to Brown's truck. Anderson, who was monitoring them from a distance, could see them talking and could hear them over his radio. Two simultaneous recordings were being made, one from the wire Brown was wearing and the other from Anderson's radio. At some point, Michael Gant joined the conversation for a few moments. Brown and Jimmy Gant then drove away for a short time and returned. It was after this meeting that Anderson called Risley to have the phony search warrant for Brown issued. Risley called back to report that he had done so and that he had taken care to call it to Williams' attention.

Anderson then rewired Brown and followed him back to the mother's house. By this time, Michael had had two telephone conversations with Williams, who was at the U.S. Attorney's Office. Because Michael Gant was no longer there, Brown and Jimmy Gant (with Anderson tailing them, unbeknownst to Jimmy) drove over to Michael's house. Anderson again conducted surveillance from a distance. Michael, Jimmy, and

Brown met outside the house and had a conversation that Anderson was able to overhear. Michael told Brown that "they did have a warrant for him" and that Michael had learned this from his girlfriend Arleen Williams. At that point, the three were standing within a foot or so of one another. The entire conversation, like the first one, was captured on tape (apparently from Anderson's radio, due to a malfunction with the wire Brown was wearing). Michael also assured Brown that Williams had been getting information at work, that she told him what she knew, and that her access had recently suffered because Calloway had been transferred. He acknowledged that Williams was not supposed to tell him anything, but that she did anyway.

Two days later, FBI agents questioned both Williams and Calloway. Williams gave a signed statement admitting that she had been leaking information, which she had learned principally from Calloway. Calloway gave a signed statement acknowledging that she sometimes talked with Williams but asserting that she did not know Williams was leaking the information.

By early September 1994, a grand jury was investigating the problem of leaks from the office. Michael Gant was scheduled to testify on September 7. Shortly before he went into the room, he commented to Special Agent Anderson that he could not see why the federal government would believe Lacy and Brown over Williams, their own employee. With more bravado than knowledge, he said, "it's not like you got tapes or anything." Michael then testified under oath before the grand jury. He stated unequivocally that Arleen Williams had never told him there was an arrest warrant for Brown; he claimed that Williams instead said that she could not give out information about Brown; and he testified that he never told Brown about the warrant. Jimmy Gant testified on the same day, to much the same effect. He said that he had never heard Michael tell Brown about a warrant, that he had never heard Michael discuss his ability to get information from Williams with Brown, and, indeed, that he had never heard his brother Mike tell Brown anything.

On February 7, 1996, the grand jury indicted both Michael and Jimmy Gant on one count of making a false material declaration to a federal grand jury in violation of 18 U.S.C. § 1623(a). The September 1994 grand jury had been investigating whether Williams had obstructed justice in violation of 18 U.S.C. § 1503 by revealing the information about the Brown arrest warrant and about other individuals suspected of criminal wrongdoing. This was actually the Fourth Superseding Indictment. The first, returned in 1994, had charged the Gants for perjury and obstruction of justice. The second had added more obstruction charges and realleged the rest, and the third restated the time period of the conspiracy and made a technical correction. The Gants went to trial on the Third Superseding Indictment, which charged § 1623(a) perjury, conspiracy to obstruct justice, and obstruction of justice. The jury acquitted them of the obstruction charges, but the court had to declare a mistrial on the conspiracy to obstruct justice charge and the perjury charge. On February 29, 1996, the court dismissed the conspiracy to obstruct justice charge in the Fourth Superseding Indictment, and thus the March 1996 trial involved only the remaining perjury charges, on which both defendants were convicted.

We consider first the Gants' joint challenge to their conviction on the theory that their lies to the grand jury were not "material to a legitimate inquiry of the grand jury." See *United States v. Waldemer*, 50 F.3d 1379, 1382 (7th Cir.1995) (*"Waldemer I"*). A statement is material if it has "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995), quoting *Kungys v. United States*, 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839 (1988). See also *United States v. Gulley*, 992 F.2d 108, 112–13 (7th Cir.1993) (noting that statements are material in the grand jury context if they have "the potential 'to impede, influence, or dissuade the grand jury from pursuing its investigation' "). *Gaudin* established that the question of materiality for prosecu-

tions under 18 U.S.C. § 1001 was for the jury to decide, and the Supreme Court expressly extended this holding to § 1623 in *Johnson v. United States,* — U.S. ——, ——, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997). See also *Waldemer v. United States,* 106 F.3d 729 (7th Cir.1996) (*"Waldemer II "*). The Court in *Gaudin* observed that the decision whether a statement is "material" requires the determination of at least two subsidiary questions of fact: "(a) 'what statement was made?'; and (b) 'what decision was the agency [or in a § 1623 case, the grand jury] trying to make?' ". *Gaudin,* at 512, 115 S.Ct. at 2314.

■ The Gants' trial took place from March 12–15, 1996, well after *Gaudin* was decided, and so the question of materiality was properly submitted to the jury. Because the Gants do not object to the way in which the jury was instructed, we agree with the government that their challenge is simply one about the sufficiency of the evidence to uphold the jury's verdict. This means that we must view all the evidence in the light most favorable to the government and may overturn the verdict only if no rational juror could have found materiality beyond a reasonable doubt. See *United States v. Turner,* 93 F.3d 276, 281 (7th Cir.1996).

■ The centerpiece of the Gants' argument is the premise that the grand jury was investigating only the narrow question whether Williams had violated the obstruction of justice statute, 18 U.S.C. § 1503, when she leaked information about the bogus warrant for Brown (which she believed to be genuine). They reason that § 1503 can be violated only if the defendant "knew of a pending judicial proceeding and intended to impede its administration," as *United States v. Maloney,* 71 F.3d 645, 656 (7th Cir.1995), puts it. Because there was no judicial proceeding involving Brown, Williams could not have "known" about it, and she certainly could not have impeded it no matter what her intent may have been.

Unfortunately for the Gants, the record at the perjury trial makes it clear that the grand jury was not limiting itself so strictly in its investigation. The foreperson of the grand jury, Kathleen Sass, testified that the grand jury was investigating "the leakage of confidential information that Arleen Williams had obtained during [the] course of her employment...." When she was asked specifically on cross-examination if this referred to the arrest warrant for Brown, she replied, "among other information." In addition, Williams' own signed statement referred to several investigations filed by the United States Attorney's Office, including those focusing on Aaron Pearl, Kent Wallace, and Troy Powers, and she admitted speaking to Michael Gant about those individuals. The grand jury asked both Michael and Jimmy Gant if they had received information about Pearl, Wallace, and Powers, as well as about other drug investigations.

As long as the Gants' testimony had "a natural tendency to influence, or [was] capable of influencing," the grand jury's broader investigation of Williams and the leaks from the office, it was material. See *Gaudin,* at 508–09, 115 S.Ct. at 2313; *Waldemer I,* 50 F.3d at 1382. The jury here reasonably could have concluded that their testimony met that standard. At the very least, information about the John Brown leak would have corroborated the testimony of other witnesses who had fingered Williams as the source of the leaks. See *United States v. Sablosky,* 810 F.2d 167, 169 (8th Cir.1987). The manner in which she learned information and the conduit through which she passed it would also have helped the grand jury in its task. Apart from the Brown "sting," the grand jury had every reason to investigate whether Williams was obstructing justice in violation of § 1503.

This takes us to the Gants' second joint argument, which is that the grand jury inquiry as a whole was unauthorized because there was no judicial proceeding pending or contemplated against Brown. For many of the same reasons we have just discussed, this argument falls when we take into account the broader scope of Williams' alleged indiscretions and the grand jury's investigation. The government argues that the grand jury was entitled to investigate possible obstruction of justice on Williams' part in cases involving Pearl and Wallace or the other unspecified "black defendants in drug related cases" (as Williams mentioned in her written statement). As the government points out, the

grand jury had no way of knowing what information the Gants might offer until they testified. Even though there was no guarantee that its inquiry would ultimately have led to an indictment against Williams for a violation of § 1503, the grand jury was authorized to inquire. See, *e.g.*, *United States v. Picketts*, 655 F.2d 837, 841 (7th Cir.1981) (grand jury entitled to inquire about events that could not result in a criminal prosecution). See also *United States v. Malsom*, 779 F.2d 1228, 1241 (7th Cir.1985) (grand juries are afforded "wide discretion" in their investigations of criminal activity).

 Michael Gant understandably has not challenged the sufficiency of the evidence against him in general, but Jimmy Gant has. For this purpose, he argues that the jury could not have found that his testimony before the grand jury was false. Jimmy, recall, was simply standing with Michael and Brown when the conversations of June 22, 1994, took place. His voice cannot be heard on the recording that Special Agent Anderson made. His perjury conviction was based on the following testimony that he gave before the grand jury:

Q: Did you hear Mike Gant tell John Brown that there was a warrant out for him?

A: No I didn't.

The government offered three key pieces of evidence to prove that Jimmy was lying. First, it presented the tape of a conversation between Michael Gant and John Brown, in which Michael told Brown that "[t]hey got a warrant." Second, it offered testimony from Special Agent Anderson that Jimmy Gant was present during that conversation, standing one foot away from Brown and from Michael at the time. Finally, it offered Brown's testimony that Jimmy was present when Michael told Brown about the warrant.

Jimmy's response is reminiscent of Bishop Berkeley's efforts to prove the non-existence of matter and to show that everything in the universe is ideal. He suggests that there is no evidence to show that he actually *heard* Michael's statement, even though he was standing a foot away from the speaker and there was nothing to suggest that conditions were unusually noisy, that he had a hearing disability, or that the speaker whispered the information to Brown. Nonetheless, like Dr.

Samuel Johnson, who "[struck] his foot with mighty force against a large stone, till he rebounded from it," proclaiming that he refuted Berkeley's theory "thus," juries are entitled to take a common sense approach to the testimony they hear. See James Boswell, *The Life of Johnson* 333 (R.W. Chapman ed., Oxford Univ. Press 1980). A reasonable jury could easily have inferred from the government's proof that Jimmy did hear Michael's statement, and that is all the government needed to prove that he lied when he said he did not.

Jimmy also argues that it was not even clear that Michael said "They got a warrant," rather than "They got one." The jury knew, however, that the question posed to Jimmy was whether he heard Michael tell Brown about a warrant. We cannot second-guess its interpretation of the tape, nor are we permitted to reweigh the evidence. This argument and his other points about alternative ways the jury might have seen the evidence do not show that the jury was compelled to see it his way.

For the foregoing reasons, we AFFIRM the judgments against both Michael Gant and Jimmy Gant.