**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Ali AKRAM, Defendant–Appellant.**

**No. 98–1205.**

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1998.

Decided Aug. 12, 1998.

David A. Glockner, Office of the United States Attorney, Criminal Division, Carolyn F. McNiven (argued), Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Paul A. Wagner (argued), Chicago, IL, for Defendant–Appellant.

Before FLAUM, MANION and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Believing that Ali Akram had sexually abused at least one, if not more, girls who were living at a shelter for illegal alien juveniles where Akram worked as a guard, the government tried twice to convict him on charges brought under 18 U.S.C. § 2244 ("abusive sexual contact"). It failed both times—the first jury acquitted him on three molestation charges and deadlocked on the remaining two, and the second jury deadlocked again on the one re-charged molestation count presented to the jury. The second time around, however, the prosecutors had added to the indictment new counts of perju-ry in violation of 18 U.S.C. § 1623(a) that alleged Akram had perjured himself at the first molestation trial. The second jury convicted him on the two counts of perjury. After Akram received a 24–month prison sentence on those convictions, the government dismissed the molestation charge. Akram claims on appeal that the evidence at trial was insufficient to prove the materiality of his alleged perjurious statements. We disagree and affirm the judgments.

**I**

Akram was hired to work at the Travelers and Immigrant Aid Society (TIAS) as a guard. TIAS operated as a subcontractor to the Immigration and Naturalization Service (INS) responsible for providing shelter to illegal alien juveniles until they could either be deported or reunited with relatives. TIAS hired him, at least in part, because of his linguistic abilities: he speaks Hindi and perhaps some other languages of the Indian subcontinent. The TIAS representative who interviewed Akram for the job may also have been impressed by Akram's account of his "law enforcement connections." Akram boasted that he had worked in Washington, D.C., on the trial of Panamanian General Noriega, that he had done undercover work for the FBI, that he had been shot in the line of duty, that he had worked for the New York Police Department, and that he had spent ten years with the Drug Enforcement Administration. All these claims proved to be empty in the end—a fact that ultimately had some bearing on his perjury convictions.

Akram typically worked the shift from 6:00 a.m. to 2:30 p.m. In December 1996, a 17–year-old Indian girl to whom we will refer as R.P. arrived at TIAS. Because R.P. spoke Hindi but not English, she had extensive contact with Akram, who served as her link with the rest of the staff. At some point after she arrived at the facility, however, her relationship with Akram took an unfortunate turn. She testified that on several occasions he had touched her, tugged on her bra strap, told her that he loved her and wanted to marry her, kissed her forehead, fondled her breasts, and crawled into bed with her. Not surprisingly, Akram also repeatedly warned

R.P. to keep quiet about his advances or he would use his "position" to deport her or to send her to jail. He even threatened that he would kill her.

In January or February 1997, TIAS learned of Akram's behavior toward R.P. and another girl. Hoping to catch him in the act, officials rigged up a hidden video camera trained on R.P.'s sleeping area. On February 4, 1997, the camera taped Akram coming into R.P.'s room before the lights were turned on, bending low over her bed, and moving his arms near her bedclothes. The lighting in the room was poor, however, which made it difficult to see precisely what he was doing. Even so, the tape evidently satisfied the authorities, because two days later federal agents arrested Akram. As we noted, Akram was eventually charged in a five-count indictment under 18 U.S.C. § 2244 for allegedly molesting R.P. twice and a 14–year–old girl three times. At trial, Akram denied everything. He explained the damaging videotape by testifying that the reason he had entered R.P.'s room was because the guard he had just relieved told him that R.P. had been upset and crying during the night. At another point in the trial, while the government was attempting to impeach him on cross-examination with his falsehoods about his vast law enforcement experience, he flatly denied that he had ever claimed any prior law enforcement affiliations.

The jury acquitted Akram of three of the molestation charges, but it could not reach a verdict on the other two. In July 1997, the government secured a superseding indictment that re-alleged the two charges of molestation that were still alive and that alleged Akram had perjured himself twice at the first trial (once with respect to his account of the videotape, and once with respect to his denial that he had misrepresented his prior experience). Prior to trial, the government dismissed one of the molestation charges. Akram again contested everything, and the second jury was also unable to reach a verdict on the remaining molestation charge. It did, however, convict him on both perjury counts. His appeal is limited to a challenge to the evidence supporting those convictions.

## II

■ The federal perjury statute makes it a crime "knowingly [to make] ... any false *material* declaration" under oath in a proceeding before or ancillary to a court or a grand jury. 18 U.S.C. § 1623(a) (emphasis added). Material statements are those that have a natural tendency to influence, or are capable of influencing, the decision of the decisionmaking body to which it was addressed. See, *e.g., United States v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *Kungys v. United States,* 485 U.S. 759, 770, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). Since *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997), it has been clear that materiality under § 1623(a) is an element of the prosecution's case and must therefore be submitted to the jury and proven beyond a reasonable doubt.

Akram wants to persuade us that, even assuming that both of the challenged statements at his first trial were false, neither one was material to the charged molestation offenses and thus he cannot be convicted under § 1623(a) for having made them. Akram has not, however, challenged the instructions the district court gave to the jury on the materiality issue. *Cf. United States v. Gant,* 119 F.3d 536, 539 (7th Cir.1997). At this stage, therefore, we must assume that the jury necessarily found materiality on this record, and we must view the entire record in the light most favorable to the jury's verdict. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Brown,* 71 F.3d 1352, 1354 (7th Cir.1995). Akram may prevail only if we find that no reasonable jury could have found materiality beyond a reasonable doubt. See *Gant,* 119 F.3d at 539.

■ We consider first Akram's testimony at the first trial that the reason he went into R.P.'s room was because Greg Harris, a guard who Akram claimed was on duty that night, had told him she was upset. Another guard, Johnny Cox, testified at the second trial that he was the one who had the shift before Akram's, not Harris. Cox further testified that R.P. was not crying or upset that night and that he did not tell Akram

that she had been upset or crying. The government also called Harris as a witness, and Harris testified that he was not on duty during the relevant time period. Harris denied ever telling Akram that R.P. was upset during the night. Finally, the Center supervisor testified that Cox was the guard on duty on the morning when the videotape was made. This evidence is more than enough to support the jury's conclusion that Akram testified falsely on this point at the first trial. That testimony was also unquestionably material. The videotape was a crucial part of the government's evidence. By offering an innocent explanation for his conduct, Akram was introducing an important element of doubt in the minds of the first jury about the charges of molestation. His story attempting to justify why he might have slipped into a 17–year–old's bedroom in the early morning hours and approached her bed was capable of influencing the jury on the issue before it, and that is enough to demonstrate its materiality.

■ But, Akram responds, the second jury's inability to reach a verdict on the molestation charge even after it had been informed about his lies about the videotape must show clearly that the videotape explanation was immaterial. Not so. First, each count of an indictment stands on its own. We do not recognize any doctrine whereby a conviction under one count must be set aside because it appears inconsistent with a jury's acquittal on a different count. See *United States v. Sims*, 144 F.3d 1082, 1083–84 (7th Cir.1998), citing *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Second, even if the second jury was convinced that Akram had lied about his reason for approaching R.P., it is impossible to know what aspect of the case caused some members of the jury to entertain doubts on the molestation charge. The question, after all, is not whether Akram would have been convicted in the first trial absent the perjured testimony; few perjury convictions would ever result under such a stringent standard. *Cf. United States v. Salinas*, 923 F.2d 339, 341 (5th Cir.1991). Instead, we ask only whether Akram's testimony could have influenced the first jury. *Cf. Gant*, 119 F.3d at 539. For all we know, the second jury failed

to convict Akram on the molestation charge before it for reasons unrelated to the videotape evidence that Akram lied about in the first trial.

■ The other perjury count was based on Akram's lies during cross-examination. At the first trial, on cross-examination Akram denied ever having claimed that he had law enforcement connections. This testimony contradicted what six previous government witnesses—all of them Akram's former coworkers—had stated during the government's case-in-chief, and what one of the government's witnesses reiterated in rebuttal. For purposes of the second trial, this is more than enough to show that Akram's denials during cross-examination were false. But is it enough to show that they were material to the first jury? The government tries to establish the statements' materiality by making one broad argument and one narrow one. The broad argument is that credibility of a defendant is always material when the defendant chooses to take the stand; Akram testified; ergo, evidence that he lied about being a liar must be material. The narrow argument is that Akram's allegations of a substantial past in law enforcement played an important part in his molestation of R.P., and thus his denial of ever having made those claims was capable of influencing the jury's finding about the molestation itself.

We confess to some discomfort with the potential breadth of the government's broad ground. We agree that this court has repeatedly said that a defendant who chooses to testify necessarily puts his credibility in issue. See, *e.g., United States v. Smith*, 80 F.3d 1188, 1193 (7th Cir.1996); *United States v. Chevalier*, 1 F.3d 581, 583 (7th Cir.1993). But the question presented in those cases involved the propriety of introducing evidence pursuant to Federal Rules of Evidence 608(b) and 404(b), not whether questions of credibility are per se "material" within the meaning of 18 U.S.C. § 1623(a). Admittedly, some cases from this and other circuits interpreting § 1623(a) have broadly held that "[i]mpeachment of a witness goes to his credibility and questions on cross-examination for this purpose may be material in the sense

required for a perjury conviction." See, *e.g.,* *United States v. Letchos,* 316 F.2d 481, 484 (7th Cir.1963) (emphasis added). See also *United States v. Sablosky,* 810 F.2d 167, 169 (8th Cir.1987); *United States v. Anderson,* 798 F.2d 919, 926 (7th Cir.1986); *United States v. Scivola,* 766 F.2d 37, 44 (1st Cir. 1985) (all stating that a perjurious statement need not be material to a particular issue in the case, but rather may be material to any proper matter for the jury's inquiry, including credibility). But *Letchos,* at least, does not say that questions on cross-examination are always material for § 1623(a) purposes. Furthermore, the cases the government cites in support of its position are pre-*Gaudin* and pre-*Johnson,* which clarified that "materiality" was not a legal matter to be decided by the court but rather a jury question subject to the reasonable doubt standard of proof. Accordingly, it is not dispositive that Fed. R.Evid. 608(b) permits cross-examination of a witness concerning the witness's character for truthfulness or untruthfulness, or that Fed.R.Evid. 404(b) permits evidence of other bad acts for certain purposes. Section 1623 requires us to evaluate whether the credibility of the defendant is an issue capable of influencing the jury. *Cf. Gaudin,* 515 U.S. at 509, 115 S.Ct. 2310. For example, certain lies on cross-examination might be too trivial to count as being relevant to the question of credibility. Similarly, some cases might involve such irrefutable and objective proof that the issue of the defendant's credibility is itself a minor consideration and not one capable of influencing the jury's decision.

So qualified, we agree with the government that Akram's false statements on this record crossed the materiality threshold. This is in part because we also agree with the government's narrower argument that whether Akram had claimed a substantial past in law enforcement played an important part in whether the jury would believe that he had molested R.P. Recall that R.P. testified that Akram had warned he would use his "position" to have her arrested or deported if she told anybody about the attacks, and that he would even kill her. Certainly, the jury would have had a very different picture of the molestation charges if it had believed Akram to be the modest, unassuming individual he claimed to be, instead of a person who put on airs about his tough law enforcement background and who threatened his victims into silence under color of authority. With the exception of the indeterminate videotape evidence, the government's proof of the molestation charges was largely a "he said, she said" case. Accordingly, the credibility of R.P. and of Akram were central to the jury's decisionmaking, and thus Akram's lies on cross-examination were material, false declarations under § 1623.

We have considered Akram's other arguments and find nothing in them that undermines the result below. The judgment of the district court is therefore AFFIRMED.