**Revised March 8, 1999**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 96-41206**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff - Appellee,**

**VERSUS**

**RANDALL ELWOOD GOURLEY,**

**Defendant - Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
_____

February 19, 1999

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

Randall Gourley raises numerous objections to his conviction and sentences on three drug-related offenses.  We affirm.

I.

Along with several other defendants, Randall Gourley was charged and tried on three drug-related counts: conspiracy to

import over five kilograms of cocaine (21 U.S.C. §§ 952(a), 960(b)(1), 963); conspiracy to possess cocaine with intent to distribute over one thousand kilograms of cocaine (21 U.S.C. §§ 841(a)(1) & (b)(1)(A), 846); and possession with intent to distribute over one thousand kilograms of cocaine (18 U.S.C. § 2; 21 U.S.C. 841(a)(1) & (b)(1)(A)). The charges arose from a scheme in which cocaine was transported from Mexico to Houston, Texas in the roof of a large tractor trailer.

The prosecution introduced evidence at trial to establish the following facts. The tractor trailer containing the drugs was driven by Walter Mace. Mace testified that when he arrived in Houston, he was led to his final destination, a warehouse, by two men known to him as "Jose" and "Happy." The warehouse was leased by Gourley, who, along with others, was present at the time of the truck's arrival. Once the trailer was secured in Gourley's warehouse, the men involved stood together in a group. In Gourley's presence, Mace asked Jose where the cocaine was hidden in the trailer. Jose responded that the roof itself would have to be removed because the drugs were concealed in a secret compartment at the top of the trailer. Gourley heard these remarks and expressed no surprise.

Unbeknownst to this cast of characters, the drugs had been detected by customs agents stationed at the border near Laredo, Texas. The agents arranged to have the truck followed to its destination. After Mace delivered his cargo under the agents'

-2-

surveillance, Gourley and his associates were observed leaving and returning to the warehouse. Ultimately, Gourley locked the fence around the warehouse, and everybody left in two trucks. Soon thereafter, Gourley was apprehended by the agents.

Inside the warehouse, customs agents removed the roof from the trailer and found approximately one ton of cocaine. Rivets similar to those the agents removed from the roof of the trailer were found strewn on the floor of the warehouse. Scales like those used to measure cocaine were also found, as well as chisels and moving boxes purchased on the day of the delivery.

Gourley was convicted by a jury on all counts. A presentence report was prepared, and Gourley entered three objections to it: (1) he claimed entitlement to a reduction for being a minor participant (U.S.S.G. § 3B1.2); (2) he objected to an increase for obstruction of justice (U.S.S.G. § 3C1.1); and (3) based on the previous two objections, he claimed that the appropriate total offense level was 36. These objections were overruled. Based on a stipulated amount of 907.3 kilograms of cocaine, the district court determined a total offense level of 40, with a criminal history category of I. Within the prescribed range of 292 to 365 months of imprisonment, the district court sentenced Gourley to 300 months of imprisonment.

Gourley now timely appeals from his conviction and sentence.[1]

---

[1] In his appellate brief, Gourley alleged that the surveillance videotape entered into evidence at trial by the

-3-

## II.

Gourley contends that the evidence adduced by the government is insufficient to support the three counts of conviction. He contends that he did not know that there was cocaine in the trailer, and he suggests that his knowledge of the contraband was not proved and cannot be inferred from the fact that he rented and controlled the warehouse. He also compares his case to other cases in which this Court reversed conspiracy convictions on the ground that participation in a conspiracy cannot be proved by mere association with persons involved with drug transactions. He contends that Mace's testimony cannot provide the evidence to support his convictions because it is "patently unbelievable,"[2] and

---

government had been altered at some point in time after his conviction, and that this circumstance prevented his appellate counsel (who was not trial counsel) from providing competent representation. *See, e.g.*, **United States v. Silva**, 559 F.2d 1303, 1305 (5th Cir. 1977). The district court did permit the government to withdraw the exhibit for use in another trial, conditioned on the government providing an exact copy of the tape for the record of Gourley's trial, and there was some legitimate confusion about whether the tape in the record was accurate. Gourley contended that the tape now in the record had been edited to excise certain exculpatory material. Pursuant to Fed. R. App. P. 10(e), we remanded the matter to the district court for the limited purpose of settling the dispute, and the district court has confirmed that the videotape in the appellate record is identical to the videotape that was shown at trial. We therefore consider the issue raised by Gourley as to the accuracy of the record and his ability to prepare an appeal to be conclusively resolved.

[2] Gourley asserts, without specificity, that "the videotape shows Walter Mace not to be telling the truth." He also suggests that various "facts" concerning Mace render his testimony suspect, including: (1) he was cooperating with the government; (2) $47,000 was deposited into one of his bank accounts, yet he claimed not to

-4-

he asserts that evidence supports his contention that he was renting the warehouse incident to his legitimate machine shop business,[3] and he was unaware of drug activity.

We review the sufficiency of the evidence offered against Gourley to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see* *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997). "All evidence and inferences from the evidence are to be viewed in the light most favorable to the government." *Stevenson*, 126 F.3d at 664; *see also* *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and this court will accept all credibility choices that tend to support the verdict." *Stevenson*,

---

know this; (3) drug conspirators paid for his legal representation; (4) he failed to identify a "non-apprehended drug conspirator" with whom he spent two weeks; (5) he claimed that he was in Waco at a time when he was not; (6) he falsely told the judge at his detention hearing that he owned a trucking business; and (7) he testified incompletely with respect to who was involved in preparing him for his testimony.

[3] The evidence identified by Gourley to support his involvement in legitimate business includes testimony by a prosecution witness that Gourley: (1) appeared to have a legitimate business "there" (presumably at the warehouse); (2) talked about office machines at the warehouse; and (3) wore a uniform and had greasy hands. Gourley also points to record evidence of examples of specific business transactions to prove that he was involved in legitimate business.

-5-

126 F.3d at 664. We are "required to accept all credibility choices that tend to support the jury's verdict." *United States v. Johnston*, 127 F.3d 380, 401 (5th Cir. 1997) (internal quotation marks omitted), *cert. denied*, 118 S. Ct. 1173 (1998).

**A.**

With respect to Gourley's conviction for possession of drugs with intent to distribute, the government must prove (1) knowing (2) possession of the drugs (3) with intent to distribute. *See* 21 U.S.C. 841(a)(1) ("[I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"); *see also United States v. Delagarza-Villarreal*, 141 F.3d 133, 140 (5th Cir. 1997); *United States v. Diaz-Carreon*, 915 F.2d 951, 953 (5th Cir. 1990); *United States v. Johnson*, 469 F.2d 973, 976 (5th Cir. 1972). Possession for these purposes may be either actual or constructive. *See United States v. Pigrum*, 922 F.2d 249, 255 (5th Cir. 1991); *United States v. Felts*, 497 F.2d 80, 82 (5th Cir. 1974).

Mace testified at trial that Gourley and the others were present when Jose disclosed where the cocaine was hidden.[4] Based

_____

[4]    Among a number of facts corroborating Mace's testimony, perhaps the most compelling are the lack of evidence of any legitimate activity that Gourley was conducting at the warehouse and Gourley's lack of a source of legitimate business that could

on this evidence, the jury could conclude that Gourley and the others heard the statement, and therefore knew about the drugs. *See United States v. Gant*, 119 F.3d 536, 540 (7th Cir. 1997) (citing James Boswell, *The Life of Johnson* 333 (R.W. Chapman ed., Oxford Univ. Press 1980) (1791)).   As in *Gant*, there is no suggestion that Gourley may not have heard the comment because of other noise, because it was whispered, or because Gourley had some hearing impairment, and therefore common sense dictates that the jury rationally inferred Gourley's knowledge about the presence of drugs.   The record contains evidence that Gourley controlled the warehouse.   The jury could infer from this fact that he provided the warehouse to store drugs and therefore constructively possessed the drugs stored therein.   *See, e.g.*, *Pigrum*, 922 F.2d at 255 ("'Constructive possession' is ownership, dominion, or control over illegal drugs or dominion over the premises where drugs are found.").   Finally, the sheer quantity of drugs involved supports an inference of intent to distribute, because one ton of cocaine is much more than Gourley and his companions could have hoped to personally use.   *See United States v. Inocencio*, 40 F.3d 716, 724 (5th Cir. 1994); *United States v. Pineda-Ortuno*, 952 F.2d 98, 102 (5th Cir. 1992); *United States v. Kaufman*, 858 F.2d 994, 1000 (5th Cir. 1988).   Thus, there is evidence to support each element of 21 U.S.C. 841(a)(1), and the jury's verdict must be affirmed.

---

support the $5,000 monthly warehouse rental obligation.

**B.**

With respect to Gourley's conviction on charges of conspiracy to import cocaine in violation of 21 U.S.C. § 952(a),[5] and conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1),[6] the government must prove the evidence establishes beyond a reasonable doubt that (1) an agreement existed between at least two non-government people to import and possess the controlled substance with intent to distribute, (2) the defendant knew of the conspiratorial agreement,

---

[5]    *See* 21 U.S.C. § 963 ("Any person who attempts or conspires to commit any offense defined in this subchapter [including 21 U.S.C. § 952(a)] shall be subject to the same penalties as those prescribed for the  offense, the commission of which was the object of the attempt or conspiracy.").    The substantive offense Gourley conspired to commit provides:

> It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter . . . .

21 U.S.C. § 952(a).

[6]    *See* 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter [including 21 U.S.C. § 841(a)(1)] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."). The substantive offense Gourley conspired to commit provides: "[I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a)(1).

-8-

and (3) he intentionally participated in the conspiracy. *See also Inocencio*, 40 F.3d at 725; *United States v. Toro*, 840 F.2d 1221, 1232 (5th Cir. 1988). A conspiracy may be proved by circumstantial evidence, *see, e.g.*, *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993), and "the government need not prove that the defendant knew of all the details, only that he knew of the conspiracy's essential purpose." *United States v. Osgood*, 794 F.2d 1087, 1094 (5th Cir. 1986). "In addition, a conviction for conspiracy to import a controlled substance may be sustained although the defendant engaged only in the conspiracy's distribution or delivery aspects after the contraband entered the country; importation is not complete until the drugs reach their final destination." *Id.* (citing *United States v. Mitchell*, 777 F.2d 248, 261-62 (5th Cir. 1985)).

Gourley did not merely rent the warehouse or turn up in the wrong place at the wrong time.[7] There was an agreement to import and possess cocaine with intent to distribute. Numerous individuals, including Gourley, his codefendant Roy Garza, Jose, and Happy, gathered at the warehouse and were present and waiting

---

[7] Gourley has directed the Court's attention to a number of cases in which a conviction hinged on a defendant's single tangential relation to drugs or a drug conspiracy which may have been coincidental and which, standing alone, was objectively innocuous. *See, e.g.*, *United States v. Blessing*, 727 F.2d 353 (5th Cir. 1984). In that scenario, we agree that a single thin thread of circumstantial evidence cannot uphold the prosecution's burden of proving guilt beyond a reasonable doubt. As explained in the text, however, that was not the situation in this case.

when the drugs arrived. These individuals participated in the drug transaction and acted in concert to recover hidden drugs from the tractor trailer. This evidence, combined with the entirely suspicious circumstances of the warehouse rental, *see supra* note 4, establishes a basis on which reasonable jurors could certainly conclude that these individuals had a prior agreement to act in concert to achieve the essential purpose of bringing drugs into the country and possessing those drugs in order to sell them to others. As previously noted, the great quantity of drugs involved supports an inference of intent to distribute, *see, e.g.*, **Pineda-Ortuno**, 952 F.2d at 102, and participation in distribution or delivery can support an inference of conspiracy to import, *see* **Osgood**, 794 F.2d at 1094. The jury's inference of an agreement is therefore supported by evidence.

Gourley's knowledge of the agreement and participation in the conspiracy are likewise supported by the evidence. The record contains evidence that Gourley controlled the warehouse. He was present at the time of delivery and was party to a conversation discussing the location of the drugs. The jury could infer from this evidence that Gourley provided the warehouse to store drugs, a fact which would support an inference of his participation in the conspiracy. *See* **Osgood**, 794 F.2d at 1094; **Mitchell**, 777 F.2d at 262. Moreover, Gourley was present while the other men worked to remove the roof of the trailer. The jury could infer Gourley's

participation in the conspiracy from this fact, as "criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetrate felonies before larger-than-necessary audiences." *United States v. Ortiz*, 966 F.2d 707, 712 (1st Cir. 1992). Finding that the elements of the conspiracy charges against him were supported by evidence, we affirm Gourley's conviction on the charged conspiracy offenses.

## III.

Gourley challenges the transfer of his case from the Houston Division of the Southern District of Texas to the Laredo Division, contending that defending the case in Laredo subjected him to unspecified "extreme disadvantage." He notes that "[t]here was no basis for the appellant to be tried outside of his home area by a jury completely not of his race." He also challenges the district court's refusal to transfer his case back to Houston. Gourley concludes that his rights under the Fifth and Sixth Amendments to the United States Constitution were violated.

The Court reviews the denial of a motion for intradistrict transfer for abuse of discretion. *United States v. Gonzalez*, 163 F.3d 255, 259 (5th Cir. 1998); *cf. Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28, 108 S. Ct. 2239, 2243 (1988) (motions to transfer venue are reviewed for abuse of discretion). A "strong showing of prejudice" is required to justify an intradistrict

-11-

transfer.  *See **United States v. Duncan***, 919 F.2d 981, 985 (5th Cir. 1990).

The denial of this motion did not constitute reversible error. Gourley has alleged no prejudice, and he makes no serious argument that the district court abused its discretion.  The record demonstrates that the transfer was originally sought because most of Gourley's witnesses resided in Houston.  This circumstance does not mandate an intradistrict transfer, as the inconvenience to Gourley of going to trial in Laredo would be "minimal at best in this age of convenient travel, communication, discovery, and trial testimony preservation." ***Smith v. Colonial Penn Ins. Co.***, 943 F. Supp. 782, 784 (S.D. Tex. 1996).  Since Gourley called many witnesses during the trial and failed to point to specific evidence of prejudice, it stands to reason that he was not prejudiced. Furthermore, the Constitution does not require,[8] and, indeed,

---

[8]  "There is no constitutional right to be tried in a particular division within a district." ***United States v. McKinney***, 53 F.3d 664, 673 (5th Cir. 1995) (citing ***United States v. Anderson***, 328 U.S. 699, 704-05, 66 S. Ct. 1213, 1216-17 (1946)).

forbids,[9] an intradistrict transfer based on the anachronistic racial justification offered by counsel.

## IV.

Gourley claims that the district court erred when it increased his offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Because Mace was the only witness who directly contradicted Gourley's testimony, Gourley contends that Mace was "auditioning for a lenient plea bargain," and the videotape supports his version of the facts and contradicts Mace's rendition. Gourley thus contends that it was clear error for the district court to conclude that he must have lied. Moreover, he notes that much of his testimony was not contradicted in any way. He should

---

[9] *See* U.S. Const. amend. V ("No person . . . shall be . . . deprived of life, liberty, or property, without due process of law . . . ."); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128, 114 S. Ct. 1419, 1421 (1994) ("[W]hether the trial is criminal or civil, *potential jurors*, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice." (emphasis supplied)) (citing, inter alia, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S. Ct. 2077 (1991)); *United States v. Leslie*, 813 F.2d 658, 659 (5th Cir. 1987) ("[T]he Fifth Amendment's due process clause, applicable to the United States, has been construed to implicitly include an equal protection guaranty generally as broad as that of the Fourteenth Amendment.") (citing *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S. Ct. 612, 670 (1976)); *see also McKinney*, 53 F.3d at 673 ("An attempt to influence the racial balance of the jury by setting a case in a particular division would not have been appropriate or acceptable . . . .").

-13-

not be punished, he reasons, for simply exercising his right against self-incrimination.[10]

"A district court's findings of fact for purposes of applying the Sentencing Guidelines are reviewed under the 'clearly erroneous' standard of review." *United States v. Powell*, 124 F.3d 655, 663 (5th Cir. 1997) (internal citation omitted). The district court did not clearly err in its determination that Gourley obstructed justice by lying on the stand. The district court made specific factual findings regarding the truthfulness of Gourley's testimony, concluding that Gourley lied about his knowledge of the

---

[10] Gourley invites us to reconsider the holding in *United States v. Storm*, 36 F.3d 1289 (5th Cir. 1994), in which this Court rejected the suggestion that a district court must determine that "no reasonable trier of fact could have found the defendant's testimony true" to enhance a defendant's sentence pursuant to U.S.S.G. § 3C1.1. Under this Court's established practice that one panel may not overrule the precedents established by previous panels, this option is not available to us. *See, e.g.*, *Earles v. State Bd. of Certified Pub. Acc'ts*, 139 F.3d 1033, 1036 n.6 (5th Cir.), *cert. denied*, 119 S. Ct. 444 (1998).

Gourley also sets his sights higher and argues that applying this sentencing enhancement based on a preponderance-of-the-evidence standard rather than the beyond-a-reasonable-doubt standard impedes his constitutional right to testify in his own defense. Gourley did not object to the sentence enhancement on constitutional grounds in the court below, and he does not develop what would be a complex argument on appeal. Thus, that point can only be considered for plain error. *See, e.g.*, *United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 971 (5th Cir. 1998). Regardless, the Supreme Court has expressly rejected this argument, noting that "a defendant's right to testify does not include a right to commit perjury," and "[o]ur authorities do not impose a categorical ban on every governmental action affecting the strategic decisions of an accused, including decisions whether or not to exercise constitutional rights." *United States v. Dunnigan*, 507 U.S. 87, 96, 113 S. Ct. 1111, 1117 (1993).

criminal activity -- specifically, Gourley knew about the cocaine, and knew when, where, and how the cocaine was being delivered. The court also concluded that Gourley committed perjury when he testified that the warehouse had been leased for legitimate business purposes. These determinations were supported by evidence in the record and thus were not clear error.

## V.

Gourley contends that even in the worst-case scenario, his participation in the scheme was minor -- he was a mere link in the chain -- and therefore he should have received a reduction pursuant to U.S.S.G. § 3B1.2(b). He offers no case authority or analysis of the Guidelines to support this position.

The district court's decision not to give Gourley an adjustment for his "minor" role was not clearly erroneous. The commentary to the Guidelines notes that the adjustment is intended for the "defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 comment. (backg'd). Given the district court's factual finding that Gourley was a "vital link" in the conspiracy, a decreased sentence was not justified. Precedent supports declining to permit the "minor participant" reduction in a case such as this. *See* ***United States v. Martinez-Moncivais,*** 14 F.3d 1030, 1039 (5th Cir. 1994) (reduction not warranted because a

guilty verdict on drug conspiracy charges "by definition entailed the jury's finding that [the defendant] had knowledge of, and voluntarily participated in, the ongoing transportation of entire truckloads of narcotics").

## VI.

Gourley asserts that "[t]he prosecution offered no evidence actually showing actual possession, and it is clear the same evidence convicted him on both conspiracy and possession charges." To the extent that this is a sufficiency of the evidence argument, that contention has been addressed *supra*. To the extent that this argument suggests that the same evidence cannot support the various convictions in this case, it is simply wrong. *See **United States v. Singh***, 922 F.2d 1169, 1173 (5th Cir. 1991) ("Typically, the same evidence will support both a conspiracy and an aiding and abetting conviction.")).

## VII.

For the aforementioned reasons, the judgment of the district court is AFFIRMED.[11]

---

[11]    With respect to Gourley's contentions that the district court made erroneous evidentiary rulings and wrongly denied a motion for continuance, we simply observe that the conclusory presentation of these assignments of error renders these points insusceptible to serious appellate review. Under our procedural rules,

> The argument must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on. The argument must also include for each issue a concise statement of the applicable standard of review; this statement may appear in the discussion of each issue or under a separate heading placed before the discussion of the issues.

Fed. R. App. P. 28(a)(6).

Gourley provides absolutely no authority for assignment of error on the district court's evidentiary rulings -- no Rules of Evidence, no case law, not anything. Our usual practice is not to entertain such points on appeal. Moreover, given the highly deferential standard of review for evidentiary rulings (*i.e.*, abuse-of-discretion review of preserved objections on evidentiary rulings which affect the defendant's substantial rights, *see* Fed. R. Evid. 103(a)), there is no chance that Gourley could prevail on these points without showing through argument that the district court ruled erroneously, and that the effect of those rulings was serious prejudice to Gourley's defense. Gourley has made no effort to satisfy these standards, and therefore his evidentiary points do not merit consideration.

Likewise, no argument has been provided concerning the district court's denial of Gourley's motion for a continuance of his trial. The only justification for this request was that "counsel had a conflicting setting." Gourley contends that the denial of his motion for continuance "[c]learly . . . affected a number of factors during trial." Our Court reviews a district court's denial of a motion for continuance for "abuse of discretion resulting in serious prejudice." *United States v. Pollani*, 146 F.3d 269, 272 (5th Cir. 1998) (citing *Avery v. Alabama*, 308 U.S. 444, 446, 60 S. Ct. 321, 322 (1940); *United States v. Dupre*, 117 F.3d 810, 823 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 857 (1998)). Gourley's utter failure to satisfy the requirements of Rule 28(a)(6) and to demonstrate abuse of discretion and prejudice therefore require affirmance on this point.

g:\opin\96-41206.opn