**UNITED STATES of America, Appellee,**

v.

**Joseph THOMAS, Sr., Appellant.**

No. 95–3023.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1996.

Decided Oct. 18, 1996.

**1500**

Santha Sonenberg, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A.J. Kramer, Federal Public Defender.

Gregg A. Maisel, Assistant United States Attorney, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., United States Attorney, John R. Fisher, Thomas C. Black and Michael L. Volkov, Assistant United States Attorneys.

Before: RANDOLPH, ROGERS, and TATEL, Circuit Judges.

RANDOLPH, Circuit Judge:

A jury found Joseph L. Thomas, Sr. guilty of four counts of unlawfully distributing heroin, one count of unlawfully possessing the drug with intent to distribute it, and one count of possessing an unregistered firearm. The district court sentenced him to concurrent terms of imprisonment of 84 months on each count, to be followed by concurrent terms of three years supervised probation on each count.

Thomas was caught red-handed. He sold the heroin to two individuals working for the Drug Enforcement Administration, one a confidential informant, the other an undercover agent. His defense to the distribution charges was entrapment. Now he asks us to set his convictions aside and order a new trial, or to remand for resentencing. There is a bit of tension between the alternative dispositions he proposes. On the one hand, Thomas wants to relitigate the question of his guilt. On the other hand, he wants his sentence reduced because he accepted the responsibility for his crimes. We will discuss his sentencing challenge first, thus reversing the usual sequence. That is the only thing we reverse.

**I**

In order to grant the two-point reduction in offense level allowed by U.S.S.G. § 3E1.1(a), the defendant must "clearly demonstrate[ ]" acceptance of responsibility for his offense. Defendants who, like Thomas, force the government to trial are not ordinarily entitled to the benefit of U.S.S.G. § 3E1.1. See id., commentary note 2; United States v. Reid, 997 F.2d 1576, 1580 (D.C.Cir. 1993). "Conviction by trial, however"—the Commentary adds—"does not automatically preclude a defendant from consideration for such a reduction." U.S.S.G. § 3E1.1, commentary note 2. Some defendants, the Commentary predicts, will go to trial to preserve issues not dealing with their "factual guilt." Id. And we suppose that between the time of conviction and sentencing, a defendant

could experience a conversion as sudden as the famous one on the Damascus road. *See United States v. DeJesus–Gaul,* 73 F.3d 395, 397 (D.C.Cir.1996). At the moment of his conviction, therefore, Thomas was not theoretically ineligible for the acceptance-of-responsibility adjustment. Thomas says the district court misunderstood this point and viewed his assertion of an entrapment defense at trial as an absolute bar to his receiving the benefit of U.S.S.G. § 3E1.1.

We think the only misunderstanding is on Thomas's part. The district court, Flannery, J., filed a careful and thorough sentencing memorandum, pointing out that Thomas persisted in his entrapment claim from trial through sentencing, as indeed he did. Thomas said this to the court:

> What can I say? This is our justice system, and I respect it, and I respect this court. I just pray that this court would take certain things into consideration. As one of them, the fact that I worked for 42 years, served in the Army for three years, spent my entire life crime free up until what I thought was truly an entrapment that unfortunately the court didn't see it as such.
>
> The Court: The jury didn't see it.
>
> The Defendant: The jury didn't see it as such.

■ About his heroin offenses, Thomas offered not one word of remorse, of culpability, of human error. He did not apologize or exhibit any shame. He insisted that he was "truly" entrapped, in other words, that the government made him do it. Yes, he admitted selling the heroin. The evidence against him was undeniable. But there is a difference between "admitting the acts and accepting responsibility for the crimes." *United States v. Cutchin,* 956 F.2d 1216, 1219 (D.C.Cir.1992). To say "It's not my fault, but I accept the responsibility," is to engage in self-refutation. *See United States v. Demes,* 941 F.2d 220, 222 (3d Cir.1991). Judge Flannery knew this as well as we do.

## II

The only other contention meriting discussion goes to the validity of Thomas's conviction and deals with the Jencks Act, 18 U.S.C. § 3500, the statute entitling criminal defendants to the "statement" of a government witness after the witness has testified on direct examination. "Statement" has several statutory meanings. The one that concerns us here is "a written statement made by said witness and signed or otherwise adopted or approved by him," 18 U.S.C. § 3500(e)(1). We suggested in *United States v. Bryant,* 439 F.2d 642, 651–52 (D.C.Cir.1971), and held in *United States v. Bundy,* 472 F.2d 1266 (D.C.Cir.1972) (per curiam), that the duty of the government to produce such Jencks Act statements operates as a duty to preserve the statements before the case goes to trial, at least if the statements consist of the officer's rough notes of an interview.

The missing "statements" of three government witnesses are in question: Brian Fitzpatrick, Lisa Somers, and Brenda Hazel. Fitzpatrick, a DEA special agent, executed a search warrant at Thomas's liquor store in 1994 and arrested him. Fitzpatrick also was in charge of seizing, among other things, five loaded firearms found in the store and a small quantity of heroin found on Thomas. Somers, a DEA special agent working undercover, purchased heroin from Thomas three times in 1993; Hazel, a confidential DEA informant, did so once in the same year.

Fitzpatrick composed his report of the search on a computer. He apparently printed a copy of his draft, and sent it along for incorporation in the final DEA–6 form. When the final came to him, Fitzpatrick compared it with what he had written; destroyed his draft, presumably by discarding the hard copy or deleting the computer file, or both; and signed the final report, which the government produced at trial.

With respect to Somers, Thomas sold her heroin in June and mid-August 1993. Before each sale, Somers and Thomas engaged in recorded telephone conversations discussing the impending transactions. Somers also had telephone conversations with Thomas until shortly before his arrest in March 1994.

During the cross-examination of Somers, defense counsel brought out the following information. For each transaction and each conversation she had with Thomas, Somers

prepared a report. She wrote her drafts in longhand, gave them to a secretary for typing, reviewed the typed copies, and then destroyed her handwritten versions. Somers' drafts were incorporated into DEA–6 forms, which she signed after checking for accuracy. As Jencks Act material, the government produced only the DEA–6 forms Somers had signed.

■ Before we get to Hazel, we offer a word of caution. We are merely assuming that the draft reports of DEA agents Fitzpatrick and Somers qualify as Jencks Act material. Not everything a witness has written constitutes his "statement" within § 3500(e)(1). The Jencks Act does not apply unless the witness has signed or otherwise adopted or approved the writing. Apparently neither Somers nor Fitzpatrick signed their drafts. Exactly when in the drafting process they adopted or approved what they had written is not clear. Drafts may be tentative. If the drafting is done on a word processor, for example, it would be foolish to think that each time the witness-to-be adds something to or deletes something from what appears on the screen, he has thereby created a new Jencks Act "statement." The author may reserve judgment about his draft until he reviews it in final, signifying his approval only when he affixes his signature to the completed document. *Cf. United States v. Walden,* 578 F.2d 966, 970 (3d Cir. 1978). If so, only the final document qualifies as a statement under § 3500(e)(1).

This brings us to Hazel, the confidential informant. She purchased heroin from Thomas on June 4, 1993, and was present during Thomas's June 16, 1993, sale to Somers. Hazel testified early in the trial, before Fitzpatrick and Somers. During her cross-examination, defense counsel showed her the two DEA reports of these transactions. Hazel had signed both. The reports were marked for identification but not introduced. Hazel testified that the reports had been "retyped or revised in the DEA office" from her originals but they still were her statements, "probably in a different form, in the format." She said she had written her drafts sometime after the transactions, signed or

initialed them, and had given them to the DEA.

In a bench conference, defense counsel requested the government to produce Hazel's original drafts. The drafts contained Hazel's initials or signature, and the district court said the defense was entitled to them if they were available. After a short break, the prosecutor reported that according to DEA agent Somers and another agent (Clyde Shelby), Hazel's drafts were retyped by a DEA secretary on to final report forms; Hazel then reviewed the reports and signed them; and somewhere along the line Hazel's original drafts were "destroyed."

Thomas's counsel thereupon moved for a mistrial or, in the alternative, to strike Hazel's testimony. The court denied both motions, but offered counsel an opportunity to question the DEA agents, outside the presence of the jury, about how and why Hazel's drafts had been destroyed, so that the court could decide "if there was anything" to the Jencks Act objection. Defense counsel chose instead to use the destruction of the drafts to impeach both Somers and Fitzpatrick, and to argue in summation that there was something suspicious in the DEA's handling of the drafts.

■ The administration of the Jencks Act is "within the good sense and experience of the district judge ... subject to the appropriately limited review by appellate courts." *Palermo v. United States,* 360 U.S. 343, 353, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959); *United States v. Augenblick,* 393 U.S. 348, 354, 89 S.Ct. 528, 532–33, 21 L.Ed.2d 537 (1969). The Act does not reflect any constitutional requirement, *id.* at 356, 89 S.Ct. at 533–34, and there is no fixed rule regarding what must be done if the government violates the Act. Sanctions are not automatic. *United States v. Rippy,* 606 F.2d 1150, 1154 (D.C.Cir.1979).

It would take far more than we have before us to justify reversing Thomas's convictions. We have not seen the DEA final reports. The government produced these at trial pursuant to the Jencks Act, but defense counsel has not included copies of them in the appendix filed in this court. The reports are not part of the record because they were

never admitted into evidence. How the missing drafts of these reports could possibly have assisted Thomas's entrapment defense to the distribution counts is anyone's guess. Defense counsel does not offer us a theory. As to his conviction on the firearms charge, Thomas—who took the stand—admitted possessing the sawed-off rifle. As to the heroin possession charge, he denied having heroin on his person when Fitzpatrick arrested him. But in questioning Fitzpatrick, defense counsel never explored whether there was any difference about this subject between the draft Fitzpatrick composed on his computer and the final report he signed. For that matter, defense counsel never asked Somers or Hazel whether the portions of the final reports containing their recitals differed in any respect from their drafts. This was not for want of opportunity. Counsel subjected Somers to a full cross-examination. Many of her reports, in draft and final, were about conversations with Thomas the DEA recorded. One of the heroin transactions at which she was present was videotaped; at another, a DEA surveillance team took photographs. Defense counsel successfully elicited some discrepancies between what Somers stated in one of her final reports and what the audiotapes revealed. How these differences related to Thomas's defense of entrapment is a mystery. As to Hazel, defense counsel could have, but did not, question the DEA agents outside the presence of the jury about whether anyone in the agency altered her drafts. Perhaps this was because Hazel's reports dealt with Thomas's sales of heroin in early and mid-June 1993. Yet as we understand the theory of defense, Thomas's entrapment claim centered on what Hazel said to him before June. We have no reason to suppose Hazel's final or draft reports of these two June transactions went into that subject. And we have no reason to think that someone in the DEA edited her draft, or for that matter, the drafts submitted by Fitzpatrick and Somers. All we know is that the drafts were given to a DEA secretary and retyped.

It seems highly unlikely that a DEA secretary, unfamiliar with the details of the investigation, would have taken a blue pencil to the drafts. More doubtless could have been learned about how the drafts were handled, but defense counsel was content to leave the record where it stood. This enabled him to argue to the jury that the missing drafts showed that the DEA had something to hide. The tactic obviously did not prevail and neither does the defense argument on appeal. The district court properly denied the motion for a mistrial and the motions to strike the testimony of these witnesses. That the district court did not, in so many words, go through the factors mentioned in *United States v. Gantt*, 617 F.2d 831, 841–42 (D.C.Cir.1980), is of no particular significance. *Gantt*, and the actual holding in *United States v. Bryant*, 439 F.2d at 651–52, which we quoted in *United States v. Lam Kwong–Wah*, 924 F.2d 298, 310 (D.C.Cir. 1991), did not rest on the Jencks Act. The notes missing in *Gantt* were not adopted or approved by the witness; in *Bryant*, the court did not decide that the missing tape constituted a Jencks Act statement. While the court in *Gantt* and *Bryant* formulated a remedy derived from the constitutional duty of disclosure laid down in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the last word on that subject is not ours, but the Supreme Court's in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

Thomas's remaining contentions do not warrant discussion. These have been considered and rejected.

*Affirmed.*