UNITED STATES of America,
Plaintiff,

v.

Herbert A. DANIELS, Defendant.

Crim. No. 01–40002–01–KHV.

United States District Court,
D. Kansas.

Nov. 9, 2001.

**1210**

Scott K. Logan, Fred J. Logan, Jr., M. Bradley Watson, Logan & Logan, L.C., Jeff K. Brown, Logan & Logan, LC, Prairie Village, KS, Thomas J. Bath, Jr., Bath & Edmonds P.A., Overland Park, KS, Jeffrey D. Morris, Berkowitz, Feldmiller, Stanton Brandt, Williams & Stueve, LLP, Prairie Village, KS, for Defendant.

Herbert A. Daniels, Leawood, KS, Pro se.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

The United States has charged defendant with numerous counts of health care fraud, mail fraud and perjury. This matter is before the Court on Herbert Daniels' Motion For Judgment Of Acquittal At The Close Of The Government's Case (Doc. # 155) filed November 5, 2001. For reasons set forth below, the Court overrules defendant's motion.

### Standards For Motions For Judgment Of Acquittal

In considering a motion for judgment of acquittal pursuant to Rule 29, Fed.R.Crim.P., the Court cannot weigh conflicting evidence or consider the credibility of witnesses. See *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 57

L.Ed.2d 1 (1978). Rather, the Court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir.1982). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that could be drawn therefrom, in the light most favorable to the government. See *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Acquittal is proper only if the evidence implicating defendant is nonexistent or is "so meager that no reasonable jury could find guilt beyond a reasonable doubt." White, 673 F.2d at 301; see *United States v. Brown*, 995 F.2d 1493, 1502 (10th Cir.) (evidence supporting the conviction "must be substantial and must not raise a mere suspicion of guilt") (citation omitted), cert. denied, 510 U.S. 935, 114 S.Ct. 353, 126 L.Ed.2d 317 (1993), overruled on other grounds by *United States v. Prentiss*, 256 F.3d 971 (10th Cir.2001).

## Factual Background

Last year, defendant was tried before a jury in federal court in Topeka, Kansas. The jury was unable to reach a verdict. The health care fraud and mail fraud charges in this action include many of the same charges brought against defendant at the first trial. In addition to the fraud charges, the United States has charged defendant with four counts of perjury arising in part from his testimony at the first trial. Defendant's motion addresses only three of the perjury charges.

Count 45 charges that defendant knowingly made a false declaration at his previous trial when he testified that "he had taken 4,000 KUMC patients with him when he joined Dr. Jacquelyne Holdcraft's practice." First Superseding Indictment (Doc. # 12) filed February 14, 2001, ¶ 35. In particular, the indictment alleges that the following answers were false:

QUESTION: Do you have any idea about how many patients you had while you were at KU?

ANSWER: I don't know how many I had, about 4,000 went with me when I moved.

QUESTION: When you moved to join Doctor Holdcraft?

ANSWER: Yes.

\* \* \* \* \* \*

QUESTION: And I think you testified last week that when you went to the Holdcraft practice you brought 4,000 patients from KU Med Center?

ANSWER: Yes.

Count 46 charges that defendant knowingly made a false declaration at a previous court proceeding when he testified that his partnership with Dr. Holdcraft "ended amicably." First Superseding Indictment (Doc. # 12), ¶ 38. In particular, defendant testified that "other than the fact that [Dr. Holdcraft] wanted to go at a different pace," no problem led to his leaving the partnership. *Id.* In contrast, defendant testified at a later court proceeding that at least two tensions led to the partnership termination: an incident regarding "stealing patients" and another incident involving the purchase of a computer system. *Id.* ¶ 39. The indictment alleges that "the two examples the defendant gave for the 'tensions' in the office did not occur, but were invented to undermine the credibility of Dr. Jacquelyne Holdcraft." *Id.* ¶ 40.

Count 47 charges that defendant knowingly made a false material declaration at his first trial when he adopted as true his prior testimony that none of his tonsillectomy patients had complained to him about loss of taste. See *id.* ¶ 46. After setting

forth defendant's prior testimony that no tonsillectomy patients had complained to him about loss of taste, see *id.* ¶ 44, the indictment charges that defendant adopted as true his prior testimony in the following passage:

QUESTION: Those were your responses to those questions, correct?

ANSWER: Yes.

QUESTION: Rendered in 1995, correct?

ANSWER: I'd have to look at the date on that, please, if I may.

QUESTION: Yes, sir. September 25th through the 28th of 1995.

ANSWER: Yes, that is correct. That's the right answer.

QUESTION: Now, that wasn't true, was it?

ANSWER: It was true.

*Id.* ¶ 45.

In his motion to dismiss, defendant argued that the Court should dismiss the perjury charges because they were fundamentally ambiguous. On July 13, 2001, the Court overruled defendant's motion. See Memorandum And Order (Doc. # 56). In the instant motion, defendant argues that the perjury charges are insufficient as a matter of law because they are fundamentally ambiguous or are not supported by the testimony of two witnesses.

### Analysis

#### I. Ambiguity

Defendant argues that Count 45 and 47 should be dismissed because they rely on questioning that is fundamentally ambiguous. "A question is fundamentally ambiguous when it is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir.1998) (citations and quotations omitted). The question of ambiguity can be resolved as a matter of law, but "in most instances, the meaning of a prosecutor's question and the truthfulness of a defendant's answer are best left to the jury." *Id.*; see *id.* ("Fundamental ambiguity is the exception, not the rule."). The Tenth Circuit has noted:

Where a question admits of two reasonable interpretations, some evidence must show what the question meant to the defendant when she answered it. See *Glantz*, 847 F.2d at 6 ("The principles underlying the Bronston decision also bar perjury convictions for arguably untrue answers to vague or ambiguous questions when there is insufficient evidence of how they were understood by the witness."); accord *Eddy*, 737 F.2d at 567. Otherwise, the Government has not provided the jury with enough evidence to conclude beyond a reasonable doubt that the defendant knowingly rendered false testimony, as required to obtain a conviction under § 1623(a). See *Wall*, 371 F.2d at 400. While a jury may guess correctly as to a defendant's understanding of a question, "it is not entitled to guess at all." *U.S. v. Martellano*, 675 F.2d 940, 946; accord *Glantz*, 847 F.2d at 6. The evidence must establish the fact. Nor is a witness required to guess the meaning of a question posed to her upon peril of perjury. See *United States v. Sainz*, 772 F.2d 559, 564 (9th Cir.1985). "Especially in perjury cases, defendants may not be assumed into the penitentiary." *Brumley*, 560 F.2d at 1277.

*Id.* at 1269–70.

Count 45 charges that defendant knowingly made a false declaration at his previous trial when he testified that "he had taken 4,000 KUMC patients with him when he joined Dr. Jacquelyne Holdcraft's practice." First Superseding Indictment

(Doc. # 12) ¶ 35. In the instant motion, defendant argues that the government has not shown what he understood the phrase "about 4000" to mean. Defendant ignores the fact that he did not so qualify his answer on cross-examination:

QUESTION: And I think you testified last week that when you went to the Holdcraft practice you brought 4,000 patients from KU Med Center?

ANSWER: Yes.

See Government's Exhibit 45 at 849. Based on the prosecutor's question on cross-examination and the common and ordinary meaning of the term "about," the government has presented sufficient evidence of defendant's understanding of the prosecutor's questions. See *United States v. Schafrick*, 871 F.2d 300, 304 (2d Cir. 1989) (jury can judge defendant's statements "according to common sense standards and give[ them] their natural meaning in relation to their context.").

Defendant also argues that Count 47 is insufficient as a matter of law. Count 47 charges that defendant knowingly made a false material declaration at his first trial when he adopted as true his prior testimony that none of his tonsillectomy patients had complained to him about loss of taste. Defendant renews his objection to the questioning as fundamentally imprecise and ambiguous. For reasons stated in the Court's prior order, the Court overrules defendant's objection. See Memorandum And Order (Doc. # 56) at 13.

▮▮▮▮▮ In addition, defendant argues that Count 47 is insufficient as a matter of law because of the medical distinction between "loss of taste" (asgeusia) and "changed taste" (dysgeusia). The difference between questions that are fundamentally ambiguous and arguably ambiguous is a hazy one. See *Farmer*, 137 F.3d at 1269; *United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir.1987). A question is fundamentally ambiguous "when it [is] en-

tirely unreasonable to expect that the defendant understood the questions posed to him." *United States v. Slawik*, 548 F.2d 75, 86 (3d Cir.1977); see *Farmer*, 137 F.3d at 1269 ("A question is fundamentally ambiguous when it is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony."). "Where a question admits of two reasonable interpretations, some evidence must show what the question meant to the defendant when [ ]he answered it." *Farmer*, 137 F.3d at 1269. Here, the common and ordinary meaning of the phrase "loss of taste" is sufficient to establish how defendant understood the phrase. "Although a prosecutor must be careful to establish a clear meaning as to the critical terms that form the basis of a perjury charge, some words are so common that there cannot be any ambiguity." *United States v. Serafini*, 7 F.Supp.2d 529, 539 (M.D.Pa.1998), aff'd, 167 F.3d 812 (3d Cir. 1999). Defendant may be able to convince a jury that he understood the phrase purely in the medical context, but individuals of ordinary intellect could agree that the ordinary meaning of the phrase "loss of taste" is sufficiently broad enough to include loss of quality or quantity of taste, and thus include "distorted taste." "If the response given was false as the defendant understood the question, his conviction is not invalidated by the fact that his answer to the question might generate a number of different interpretations." *United States v. Markiewicz*, 978 F.2d 786, 808 (2d Cir.1992) (quoting *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir.1986)) (further quotations and citations omitted), cert. denied, 506 U.S. 1086, 113 S.Ct. 1065, 122 L.Ed.2d 369 (1993); see *United States v. Hilliard*, 436 F.Supp. 66, 71 (S.D.N.Y. 1977) ("Where words or phrases of com-

mon usage form the predicate of a perjury charge and are arguably susceptible to more than one construction, whether the former witness and his examiner had a shared understanding with respect to them is properly left an issue for trial."). For these reasons, defendant's motion for judgment of acquittal is overruled as to Count 47.

## II. Two Witness Rule

 Defendant next asserts that Count 46 is insufficient as a matter of law because the government's evidence consists solely of the testimony of Dr. Holdcraft. The so-called two-witness rule "does not literally require the direct testimony of two separate witnesses, but rather may be satisfied by the direct testimony of one witness and sufficient corroborative evidence." *United States v. Chaplin*, 25 F.3d 1373, 1377 (7th Cir.1994) (quoting *United States v. Diggs*, 560 F.2d 266, 269 (7th Cir.), cert. denied, 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 283 (1977)); see 18 U.S.C. § 1623(e) ("Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence."). The corroborating evidence must be "inconsistent with the innocence of the accused" and "of a quality to assure that a guilty verdict is solidly founded." *United States v. Forrest*, 639 F.2d 1224, 1226 (5th Cir.1981) (quotations and citations omitted). Here, the corroborating evidence consists of defendant's prior sworn testimony. In its case-in-chief, the government introduced defendant's sworn statement from a civil case where defendant testified that "other than the fact that [Dr. Holdcraft] wanted to go at a different pace," no problem led to his leaving the partnership. See Exhibit 46–A at 48. Defendant's sworn statement is sufficient corroborative evidence for a reasonable jury to find beyond a

reasonable doubt that defendant committed perjury when he testified that at least two tensions (including an incident regarding "stealing patients" and one involving the purchase of a computer system) led to the partnership termination. Accordingly, defendant's motion for judgment of acquittal is overruled as to Count 46.

**IT IS THEREFORE ORDERED** that Herbert Daniels' Motion For Judgment Of Acquittal At The Close Of The Government's Case (Doc. # 155) filed November 5, 2001 be and hereby is **OVERRULED.**